# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with Google account **bahrami.alir@gmail.com**, as described in Attachment A

)
)
)
)
)
)
)

Case No. 18-M-96 (DEJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Information associated with Google account **bahrami.alir@gmail.com**, as described in Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: illegal export of U.S. origin goods from the United States to Iran, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706 and the Iranian Transactions Regulations (31 C.F.R. Part 560).

The application is based on these facts: See attached affidavit.

☒ Delayed notice of ___30___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Bryan J. Pabst, Special Agent US Dept. of Commerce, OEE
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: Aug. 1, 2018

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Bryan J. Pabin, Special Agent of the U.S. Department of Commerce, Office of Export Enforcement (OEE), being duly sworn, do depose and state:

### I. INTRODUCTION AND SUMMARY OF PROBABLE CAUSE

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google, Inc., to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the email address **bahrami.alir@gmail.com** ("**The Subject Account**"), as described in Attachment A, including the contents of communications. Upon receipt of the information described in Section I of Attachments B, government-authorized persons will review that information to locate the items described in Section II of Attachments B.

2. As set forth in detail below, based upon my ongoing investigation, I have probable cause to believe that from at least April 1, 2016 until February 1, 2018, Mr. Alireza Bahrami ("BAHRAMI") used **The Subject Account** to facilitate the purchase of electronic components from Wisconsin-based Technical Prospects LLC ("TECHNICAL"), including transactions bound for Iran, an embargoed destination. BAHRAMI represented himself as a business representative for Alton Karan Group ("ALTON") of Iran, as well as for Goldiran General Trading FZCO ("GOLDIRAN") of the United Arab Emirates ("UAE").

3. TECHNICAL is a supplier of new, used, and refurbished Germany-based Siemens AG ("SIEMENS") brand imaging equipment parts, including the electronic components used in various SIEMENS systems. OEE contacted TECHNICAL about the shipment of electronic components that seemed to be restricted under the Export Administration Regulations ("EAR") and bound for suspicious UAE destinations, including to GOLDIRAN and to non-end

users in the UAE. TECHNICAL agreed to cooperate with this investigation and consent to provide **The Subject Account** emails detailed in this affidavit.

4. Based upon the facts uncovered by my investigation, I have probable cause to believe that evidence currently exists on the computer systems of Google, Inc. in particular within **The Subject Account**, concerning the illegal export of U.S. origin goods from the United States to Iran, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706 and the Iranian Transactions Regulations (31 C.F.R. Part 560), including evidence related to the ultimate disposition of those U.S. goods by an Iranian purchaser.

## II. AGENT BACKGROUND

5. I am a Special Agent with the OEE Chicago, Illinois, Field Office. I have been an OEE Special Agent since January 2003. I successfully completed 20 weeks of criminal investigative training at the Federal Law Enforcement Training Center in Glynco, Georgia. As an OEE Special Agent, I am responsible for investigating criminal violations of laws relating to the export of controlled commodities and technology from the U.S. I also investigate the diversion and transshipment of various U.S. origin goods to embargoed destinations, including Iran. I have been an affiant and participated in the execution of numerous federal search warrants in such investigations.

6. This affidavit is based on my personal knowledge, my review of records and other materials obtained during the course of this investigation, including interview reports, as well as information provided to me by other government personnel with knowledge related to this investigation. I believe the information received from others to be truthful and reliable to the best of my knowledge. Where I have reported statements made by others, or from documents that I have reviewed, those statements are reported in substance and in part, unless otherwise indicated.

Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for issuance of the search warrant.

### III. STATUTORY BACKGROUND OF VIOLATIONS

7. Pursuant to authority granted under the IEEPA, the President of the United States has issued orders and regulations governing and prohibiting certain transactions with Iran by United States persons or involving United States goods. The IEEPA, at 50 U.S.C. § 1705, provides in pertinent part as follows:

(a) Unlawful Acts. It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter.

(c) Criminal penalty. A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both.

8. Pursuant to an Executive Order 12959 issued by the President in 1995, the Secretary of the U.S. Department of Treasury, in consultation with the Secretary of State, has promulgated the Iranian Transactions Regulations (ITR), codified in part at 31 C.F.R. §560.203 & 204, which generally prohibit any person from exporting or causing to be exported from the United States to Iran any good or technology without having first obtained an export license from the U.S. Department of Treasury, Office of Foreign Assets Control (OFAC). Effective on October 22, 2012,

pursuant to Executive Order 13599, the ITR were replaced by the Iranian Transactions and Sanctions Regulations (ITSR), which did not change the substantive provisions of 31 C.F.R. §560.204.

9. The ITSR impose, among others, the following prohibitions set forth in 31 C.F.R. § 560.204:

> Except as otherwise authorized [by a license issued by the OFAC], the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited.

### IV. FACTS ESTABLISHING PROBABLE CAUSE

10. In June 2016, ALTON was established as a new customer with TECHNICAL. The following information was entered into the TECHNICAL ordering system as ALTON contact information: "Alton Karan Group, First Floor, No 16 Eastern Nastaran St., ArabAli St., Khoramshahr St, Tehran, Iran" and "Point of Contact: BAHRAMI at bahrami@altonkaran.com" and at **The Subject Account.** BAHRAMI also provided TECHNICAL a shipping address for GOLDIRAN as a JW Marriott Hotel in Dubai, UAE.

11. In July 2016, A TECHNICAL sales representative sent an email to **The Subject Account** to inquire about the status of potential orders with ALTON and the nature of their business. In response, BAHRAMI used **The Subject** Account to send the following email on August 3, 2016:

> We bought 15 numbers of module P29F. We have used 10 modules and one was faulty. We are waiting for testing the last 5 to see if they work properly or not. After that we will contact you and send the faulty ones.
>
> About the systems, I can tell you that one of our main activities is supplying spare parts and accessories for Siemens representative in Iran.

12. On or about August 10, 2016, BAHRAMI sent an email from **The Subject Account** writing, in part:

> We have a problem to send items directly from Iran. Because it seems that there is some difficulty for DHL to deliver the items which is sent from Iran. We have to send firstly to turkey or uae and after that send from there to you.
> I think if you send them partially and separately it may be costly. No?

The investigation revealed this email was regarding a replacement shipment for frequency converters. In August 2016, using **The Subject Account,** BAHRAMI negotiated with TECHNICAL to buy the replacement converters from the U.S. The converters were exported by TECHNICAL to ALTON on or about August 22, 2016. Based on BAHRAMI's emails, the converters were bound for the same customer as the party that was returning similar (i.e., nonfunctioning, or "faulty") converters from Iran.

13. Throughout August and November 2017, BAHRAMI and a TECHNICAL salesperson exchanged emails, including via **The Subject Account**, about a new order. In the emails, the two parties discuss pricing and shipping details. On or about August 22, 2016, BAHRAMI used **The Subject Account** to discuss the payment of the new order with a TECHNICAL employee. BAHRAMI wrote, in part:

> I arranged with my brother to transfer the payment today from Canada. The total amount is 7500+450=7950 $
>
> And also we are arranging to send the exchange items to you ASAP then you return 3000 $ to us?
>
> Meanwhile please make the invoice with lower price because it will be costly for us in Dubai Custom. please mention 500 $ for each Frequency Converter and 200 $ for P29f module.

On or about August 22, 2016, TECHNICAL exported a P29f module to the UAE on behalf of ALTON that probably corresponds with the shipment referenced by BAHRAMI above.

BAHRAMI also sent another email regarding the undervaluing of shipments to the UAE: In a November 1, 2016 email from **The Subject Account**, BAHRAMI requested TECHNICAL change the value of a pending shipment, stating: "Because of custom please mention the price of each item 100 $."

14. On November 14, 2017, an OEE Special Agent interviewed TECHNICAL employees about the potential diversion of U.S. goods to Iran through the UAE. During this interview, TECHNICAL employees, including the company's President, confirmed that BAHRAMI was the main business contact for ALTON and GOLDIRAN, and that the ALTON address was listed as being in Iran and GOLDIRAN did not appear to be an actual end user. The TECHNICAL employees also provided documentation on two completed 2017 transactions between TECHNICAL and ALTON. Both of the invoices listed the "Bill To" as ALTON in Tehran, Iran and the "Ship To" as GOLDIRAN at the Marriott Hotel in Dubai, UAE. The investigation confirmed these two transactions were completed: They were exported to GOLDIRAN February and June 2017 and invoiced to ALTON in Iran. The February 2017 export included ECCN 3A225 frequency converters.

15. Subsequent to the November 2017 meeting between TECHNICAL and OEE, the Director of International Sales for TECHNICAL emailed BAHRAMI at **The Subject Account** and advised BAHRAMI that the company was visited by the "U.S. Customs Office" concerning shipments to Iran through ALTON and GOLDIRAN. In response, BAHRAMI wrote the following, in part, using **The Subject Account**:

> Generally we will deliver our purchased products to our customers in Dubai. Then, they will utilize them in Dubai or other regions in the middle east.
>
> But if you consider it specifically, Maybe some of our customers take some products to Iran.

Nevertheless, I suggest you if you think it causes some problem for you and our cooperation don't mention Iranian customers for your custom.

16. Open source internet research conducted in July 2018, including of the ALTON website, shows that ALTON is an Iranian-based company involved with commercial maintenance and repair services for medical and non-medical fields. The ALTON website lists "Iranian business" as their primary customers and that they are involved with the "importation of spare parts," including for use in laboratories and research. BAHRAMI is identified as a "managing director" at ALTON in an Iranian business directory and a social media profile.

17. On July 17, 2018, Google confirmed **The Subject Account** as active and owned and registered to Alireza Bahrami with a user provided country of Iran. During 2018, **The Subject Account** was logged into at least 20 times. The two most recent logins provided (i.e., In June 2018, corresponding with the preservation of the account) were from an IP address identified by an online IP address search as resolving to Iran.

18. None of the parties involved (i.e., specifically BAHRAMI, TECHNICAL, GOLDIRAN, or ALTON) have ever obtained a license from DOC or OFAC to export or transship any U.S. goods to Iran.

## V. CONCLUSION

19. In summary, this investigation has revealed the following in relation to BAHRAMI and his use of **The Subject Account**:

- BAHRAMI regularly uses the email account to conduct international business for ALTON and GOLDIRAN, including to send and receive shipping and payment information.

- BAHRAMI used the email account to encourage TECHNICAL to change shipping records and obfuscate the true destination of Iran for items originating in the United States.

- BAHRAMI is conducting business in Iran through the UAE as a representative of ALTON, an Iran-based company doing business primarily in Iran

- Some of the items probably diverted by BAHRAMI to Iran are probably on the CCL and would require a license to ship to the UAE or Iran due to nonproliferation reasons of National Security concern

- Based on my understanding of the use of such accounts to conduct such business and BAHRAMI's reference to other parties involved in these transactions, it is likely the email was used to communicate with parties other than TECHNICAL about the transactions.

- The account is active, owned by BAHRAMI, and logged into from Iran

16. Based on the aforementioned facts, I respectfully submit that there exists probable cause to believe that BAHRAMI unlawfully acquired goods originating in the United States for shipment to and use by Iran, in violation of the IEEPA, 50 U.S.C. § 1705, and the Iranian Transactions Regulations, 31 C.F.R. § 560.204, and that evidence of those crimes will be found in **The Subject Account**.

## CONCLUSION

17. I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Google account "bahrami.alir@gmail.com" that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

## Attachment B

## Particular Things to be Seized

I. **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of April 1, 2016 to February 1, 2018.

a. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

f. All communications, in whatever form, and other information from Google Hangouts associated with the account;

g. All information and documents from Google Docs associated with the account;

h. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google; and

i. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 50 U.S.C. §§ 1701-1706, those violations involving Alireza Bahrami and others unknown to law enforcement and occurring after June 1, 2016, including, for the account listed on Attachment A, information pertaining to the following matters:

(a) Communications between Alireza Bahrami and any co-actors in furtherance of their scheme.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the persons who created or used the user ID, including records that help reveal the whereabouts of such persons.

(e) Files and records that contain financial information, credit card numbers, social security numbers, bank account numbers, and other personal identifiable information;

(f) The identity of the persons who communicated with the user ID about matters relating to the scheme to defraud described above, including records that help reveal their whereabouts.